First National Bank of Jersey City v. Kimball.

---

THE FIRST NATIONAL BANK OF JERSEY CITY et al.

*v.*

CHARLES W. KIMBALL et al.

A and B mutually agreed upon C as an assignee, to whom A assigned various claims which he held against third parties, which C was to collect, and transfer the net proceeds thereof to B, in liquidation of A's indebtedness to B.—*Held,* that the fact that C was, at the time of such assignment, the attorney and counsel of B, in a suit for the settlement whereof the assignment was made, did not render B liable for his negligence in such collections.

---

Bill for relief. Upon order to show cause why preliminary injunction should not be issued. On bill and answer (of Kimball) and affidavits on both sides.

*Messrs. Wallis & Edwards,* for complainants.

*Mr. Charles W. Kimball, in pro. pers.*

THE CHANCELLOR.

The bill is filed by the First National Bank of Jersey City and the Wallis Iron Works, a corporation of this state, against Charles W. Kimball and the Phœnix Iron Company, a Pennsylvania corporation. The facts stated by the bill are as follows: In September, 1884, the Wallis Iron Works were indebted to the Phœnix Iron Company to the amount of $12,641.52, to recover which the latter had brought suits, which were then pending against the former, in New York and in this state. The Wallis Iron Works had, on or about the 17th of June, 1884, in order to secure to the First National Bank of Jersey City payment of about $18,000 which it owed to the bank, assigned to the latter certain claims in its favor, one against John Lee, of Brooklyn, New York, for $18,191.48, and another against Moore & Carr, of Syracuse, New York, for $830, to be collected so far as necessary to the payment of its claim against the iron works. By an instrument dated September 22d, 1884 (it is said that it was not executed and delivered until on or about November 12th, 1884), made in pursuance of an arrangement between the bank and the iron works and the iron company, the bank and the iron works sold, assigned, transferred and set over to Charles W. Kimball all claims and demands of every nature and description held or owned by them against the above-mentioned Holmes Brothers, John Lee and Moore & Carr, and all claims and demands against W. R. & W. Haven, D. Van Orden & Co. and Austin Gibbons, together with all liens and securities held or owned by them therefor, and all moneys due or to grow due thereon, in trust, to collect, receive and receipt for all the moneys due or to grow due thereon, or, with the assent of the iron works, to compromise the claims, and upon receipt of payment thereof, to release and discharge the liens or other securities, he to take all lawful means for the collection of the claims, and out of the moneys received, first, to pay all reasonable costs and expenses

actually incurred in the collection, and then to pay in full all existing claims of the iron company against the iron works, the amount of which was thereby fixed at $12,641.52, on the 10th of September, 1883, and pay over the balance to the bank. Mr. Kimball, the trustee, was the attorney of the iron company in the suit brought against the iron works in this state, and was nominated by Isaac L. Miller, the New York attorney of the iron company, as a proper person to be trustee, and the nomination was agreed to.

The bill states that the iron company and Kimball might, with proper diligence, have collected the entire claim against Lee (which was a debt due him from the North River Construction Company, now an insolvent corporation of this state), but that by their negligence they failed to do so. When the assignment to Kimball was made, a receiver of the construction company had been appointed by this court. About two months after the assignment was made, Lee made, in the State of New York, where he lived, an assignment of his property for the benefit of his creditors, with preferences, but the claim of the iron works was not among those which were preferred. After that assignment had been made, Kimball, having first obtained leave of this court so to do, issued an attachment against Lee in this state, upon that claim, in order thus to reach the debt due from the construction company to Lee by attaching it, notwithstanding the assignment, in the hands of the receiver, who resided in this state; the intention being to maintain under the attachment that the assignment was, on account of the fact that it made preferences, against the policy of our laws, and therefore passed no title to the debt due from the construction company, as against New Jersey creditors. The attachment was levied, but it was discontinued because the sheriff had, without authority, altered the return to a date exceeding thirty days from the time of filing the affidavit upon which the writ was issued, and had not executed the writ within the thirty days; and it was apprehended that the fact that the writ was not returned and was not executed within the thirty days, would render the attachment under it void. When it was placed in the sheriff's hands, the

writ was returnable within the thirty days. Another writ was then issued and delivered to the sheriff, who, without any directions so to do, returned it unexecuted. A third writ was issued and under it the claim was attached, but the writ was not issued until after the receiver had made a compromise with Lee's assignee, by which the latter, acting under the order of a court in New York, agreed to receive and the former agreed to pay him fifty cents upon the dollar of the claim in full of the demand. This court held that that agreement was a novation of the debt, and that by it the receiver had become bound to the assignee to pay the amount agreed upon, and that therefore the attachment was of no avail. *Kimball* v. *Lee, 13 Stew. Eq. 403.* The bill states that the amount collectible from Lee was $11,795, with interest from January 1st, 1884, altogether, at the date of filing the bill, $13,385 or thereabouts; that Kimball has collected from Holmes Brothers, under the assignment in trust, $5,320 or thereabouts, and that those amounts are together more than enough to pay the claim of the iron company against the iron works, including the compensation of the trustee. It prays that Kimball may be decreed to account for the claims assigned to him in trust, and the proceeds thereof, and that upon such accounting, the Lee claim may be applied at its full face value with interest, towards the satisfaction of the debt of the iron company, and that he may be decreed to account for and transfer to the bank all the claims assigned to him which remain uncollected, and all moneys in his hands realized from the claims assigned to him, in excess of the amount which, with the full amount of the Lee claim and interest thereon, will pay and discharge the debt of the iron company, together with the reasonable expenses of the trust; and that he may be enjoined from paying over, assigning or making any disposition of any of the moneys or claims in his hands except to pay or deliver them to the bank. Kimball has answered.

There are numerous affidavits appended to the bill and answer respectively, in support of the allegations in each. In the very full briefs put in on each side, several questions are discussed, but it is only necessary to consider one of them, and that is

whether the relation which Kimball as trustee held to the iron company was such as to make the company responsible for his negligences and defaults, if any there were. The bill alleges that the iron company, through Kimball as its attorney and trustee, undertook the sole and exclusive charge of the collection of the claims assigned to him and of each and all of them, and that neither the bank nor the iron works had any control or voice in the matter from the time of making the assignment.

According to the answer, the iron works, through their president and counsel, assumed and exercised in fact more control over the proceedings in this state to enforce payment of the Lee claim than did the iron company or any person in its behalf, and Kimball swears that two suits were commenced by attachment in December, 1885, or January following, by the law firm of which the president of the iron works was a member, as attorneys, upon claims assigned to him, Kimball, by the assignment in trust; that one was the claim against W. R. & W. Haven, and the other the claim against Moore & Carr; that the before-mentioned law firm have had entire control over those suits, and that those suits were not begun at his request, but were commenced without asking his consent. He also says that that firm were the solicitors of record in the before-mentioned suit of *Kimball* v. *Lee*, in this court; that the president of the iron works drew the bill and argued the motion for an injunction, and advised the appeal which was taken, and which is still pending. It appears that when the arrangement which resulted in the assignment in trust was made, Mr. Miller, who, as before stated, was the New York attorney for the iron company in the collection of its claim against the iron works, suggested (he swears that it was merely a suggestion) Mr. Kimball as a proper person for trustee, and that the suggestion was accepted promptly by the counsel of the bank and the iron works. Mr. Kimball swears that after the assignment in trust was made, he could not properly have, and in fact did not have, the relation of attorney to the iron company, nor any other relation except that of trustee, as clearly defined in the assignment. The fact that the person who was appointed trustee was, when the assignment was

made, the attorney-at-law of the iron company in the suit for the settlement whereof the arrangement which resulted in the assignment was entered into, imposed no obligation or liability upon that company beyond what would have rested upon it had one who was an entire stranger been appointed such trustee. The theory of the bill is manifestly that the iron company is to be held to precisely the same accountability as it would have been if the assignment had been made to it. This claim is based wholly upon the proposition that the assignment to Kimball was an assignment to the iron company, because when it was made he was acting for that company as its attorney-at-law in the collection of the debt due to it from the iron works. The proposition cannot be maintained. Mr. Kimball was selected by mutual consent of the parties to the assignment to be the trustee. He was trustee for all, according to their interests in the subject of the trust, and he is responsible to all accordingly. He did not represent the iron company in any different way from that in which he represented the other parties, and that company is no more responsible to the other parties for his malfeasances, misfeasances, neglects or defaults, if any there were, than those parties are responsible to the iron company therefor.

The order to show cause and the *ad interim* stay will be discharged, with costs.